UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIAH JANAE BANKS,
*individually and on behalf of* J.B., a
minor,

       Plaintiffs,

v.                                 Case No.:  8:25-cv-3045-JLB-CPT

CITY OF WINTER HAVEN, et al.,

       Defendants.

_____/

## <u>ORDER</u>

Plaintiffs Mariah Janae Banks ("Ms. Banks") and her daughter, J.B., by and through her mother and natural guardian, Ms. Banks (collectively, "Plaintiffs"), sue Defendants City of Winter Haven ("the City") and Chief Vance Monroe ("Monroe") (collectively, "Defendants"), as well as unnamed individual JOHN DOE officers of the Winter Haven Police Department ("JOHN DOE officers") under 42 U.S.C. § 1983 alleging unreasonable seizure, supervisory liability, and *Monell* liability. (Doc. 1). Defendants filed a Motion to Dismiss Plaintiffs' Complaint. (Doc. 21). Plaintiffs responded. (Doc. 25). Upon careful review, the Motion to Dismiss (Doc. 21) is **GRANTED in part**.

## BACKGROUND[1]

On March 4, 2025, Winter Haven police officers responded to an alleged armed disturbance involving a man named Godfrey Hercules, who had been reported to have brandished a firearm during a dispute. (Doc. 1 at ¶ 9). Police dispatch had issued a "Be on the Lookout" for a man, a woman, and a small child in a red Nissan Altima. (*Id.* at ¶ 10). The police officers found that vehicle in the parking lot of the American Legion Tag Agency in Winter Haven, Florida. (*Id.*). Upon seeing a vehicle matching that description, the officers exited their respective vehicles with assault-style rifles and handguns drawn, pointing their weapons toward Plaintiffs. (*Id.* at ¶ 12).

Next, the officers ordered Plaintiffs to exit the vehicle and lie face-down on the ground. (*Id.* at ¶ 13). Ms. Banks and J.B. lay down on the pavement with their hands behind their back. (*Id.*). The officers' weapons remained drawn on Ms. Banks for several minutes. (*Id.* at ¶ 14). This continued after dispatch confirmation and direct observation that neither Plaintiff nor J.B. was armed or involved in the alleged disturbance. (*Id.* at ¶ 14). Ultimately, the officers released both Plaintiffs at the scene without charges after determining they were not involved in the alleged altercation. (*Id.* at ¶ 17). Ms. Banks alleges that because of this episode, she has experienced physical pain and emotional distress, including

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the Complaint. (*See* Doc. 1).

anxiety and humiliation.  (*Id.* at ¶ 18).  The Complaint further alleges that J.B. developed acute emotional trauma, including nightmares, bedwetting, and fear of police officers, requiring ongoing therapy for symptoms consistent with post-traumatic stress disorder.  (*Id.*).

Before this incident, Defendants were aware of multiple citizen complaints and internal affairs reports concerning unnecessary escalation and failure to de-escalate by Winter Haven police officers, including incidents involving children or family environments.  (*Id.* at ¶ 19).  Defendants publicly defended the use of force as "within policy," declined to impose discipline, and took no corrective measures.  (*Id.* at ¶ 20).

On November 5, 2025, Plaintiffs filed their Complaint.  (Doc. 1).  Defendants Chief Monroe and the City move to dismiss.  (Doc. 21).  Plaintiffs respond in opposition.  (Doc. 25).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  This plausibility standard is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in a complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

42 U.S.C. § 1983 imposes liability on persons who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" *Id.* Therefore, to state a claim under Section 1983, a plaintiff must allege that: (1) a defendant deprived him of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). Additionally, where a plaintiff seeks to impose liability on one who is not an active participant in the alleged constitutional deprivation, that plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Williams v. Bennett*, 689 F.2d 1370, 1380–81 (11th Cir. 1982).

## DISCUSSION

Defendants argue that Plaintiffs have failed to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 21). Specifically, Defendants argue that (1) Monroe should be dismissed in his individual and official capacity because Plaintiffs have failed to state a supervisory liability

4

claim against him,[2] and (2) Plaintiffs have failed to state a *Monell* supervision and training claim against the City. (*Id.*). Upon review of Plaintiffs' Complaint and the parties' briefing, the Court grants Defendants' Motion in part. The Court also finds that the unnamed individual officers should be dismissed entirely from the case because fictitious-party pleading is not permitted in federal court and, in any event, Plaintiffs failed to state a Section 1983 claim of unreasonable seizure.

## I.   Whether JOHN DOE officers should be dismissed.

Plaintiffs allege in Count I that JOHN DOE officers on scene pointed and maintained firearms on Plaintiffs. (Doc. 1 at ¶ 23). And they allege in Count II that JOHN DOE officers continued to hold them at gunpoint after confirming that they were not involved in any criminal activity. (*Id.* at ¶ 28). The Plaintiffs in both counts assert that the JOHN DOE officers engaged in an unreasonable seizure of Plaintiffs in violation of the Fourth Amendment. (*Id.* at ¶¶ 24, 29). But Plaintiffs fail to provide any identifying information as to the individual officers. (*Id.* at ¶ 8).

Federal courts do not allow fictitious-party pleading as a general matter. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is one limited exception to the general rule where "the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)) (internal quotation marks omitted). But the "law is clear that the unnamed defendant must be clearly described so as to be

---

[2] Defendant Monroe reserves the right to assert qualified immunity from Plaintiffs' claims.

subject to service of process even without a name." *Castle v. Cobb Cnty., Ga.*, No.

22-12156, 2023 WL 3772501, at *1 (11th Cir. June 2, 2023).  Dismissal of purported

claims against inadequately identified defendants is proper.  *See Richardson*, 598

F.3d at 738.

Here, Plaintiffs only stated the following regarding the JOHN DOE Officers:

"Defendants JOHN DOE OFFICERS 1–5 are Winter Haven police officers whose

identities are currently unknown."  (Doc. 1 at ¶ 8).  With the exception of identifying

the JOHN DOE Officers as employed with the Winter Haven Police Department,

Plaintiffs fail to provide any specific details sufficient to identify the defendants to

effectuate service on those unnamed defendants such that they could defend

themselves.  *See Richardson*, 598 F.3d at 738.  Without additional identifying

information, Counts I and II against the unnamed "JOHN DOE OFFICERS" must

be dismissed.

Even if proceeding against the JOHN DOE officers were allowed, Plaintiffs

do not plausibly plead an unreasonable seizure by the officers.  For Section 1983

liability, a seizure must be unreasonable to constitute an underlying Fourth

Amendment violation.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).  A

seizure takes place "when the officer, by means of physical force or show of

authority, has in some way restrained the liberty of a citizen."  *Courson v.*

*McMillian*, 939 F.2d 1479, 1488 (11th Cir. 1991) (citing *Terry v. Ohio,* 392 U.S. 1, 19

n.16 (1968)) (internal quotation marks omitted).  If the seizure is merely an

investigatory stop, only reasonable suspicion is required for the seizure to pass

6

constitutional muster.  *See United States v. Roper*, 702 F.2d 984, 985 (11th Cir. 1983).  An investigatory stop requires specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.  *Terry*, 392 U.S. at 21.  "Brief detentions by law enforcement officers do not rise to the level of an arrest and may be supported by less than probable cause."  *Roper*, 702 F.2d at 985.

Here, Winter Haven police officers were responding to an armed disturbance report involving a man.  (Doc. 1 at ¶ 9).  Police dispatch had issued a "Be on the Lookout" (BOLO) for a red Nissan Altima occupied by a man, a woman, and a small child.  (*Id.* at ¶ 10).  Officers, upon seeing a vehicle matching this description, approached with their weapons drawn and ordered the occupants to exit the vehicle and lie face-down on the ground.  (*Id.* at ¶¶ 10, 12, 13).  The officers maintained their weapons trained on the Plaintiffs for several minutes.  (*Id.* at ¶ 14).  While Plaintiffs were subject to this investigatory stop, officers confirmed through dispatch and direct observation that neither was armed nor involved in the alleged disturbance.  (*Id.*).  Plaintiffs were released at the scene after officers determined they were not involved in the armed altercation for which Winter Haven police officers were dispatched to investigate a report of an armed disturbance and BOLO for a red vehicle seen at the location of the armed disturbance.  (*Id.* at ¶ 17).

Based on the facts alleged, the police officers had sufficient reasonable suspicion to conduct an investigatory stop of the occupants of the red Nissan Altima after receiving the armed disturbance report and BOLO issued by police dispatch.

7

*See Terry*, 392 U.S. at 21.  And an officer's display of weapons does not necessarily convert an investigatory stop into an arrest.  *Roper*, 702 F.2d at 987.  Regarding the detention of Plaintiffs, the Complaint does not allege a specific period of time beyond "several minutes."  (Doc. 1 at ¶ 14, 17).  Several minutes is not an unreasonable period of time.  *See Courson*, 939 F.2d at 1491 (citing *United States v. Willis*, 759 F.2d 1486, 1497 (11th Cir. 1985)).  Plaintiffs' insufficient factual allegations fail to state a claim of unreasonable seizure upon which the Court can grant relief at this time.

## II.   Whether Defendant Chief Vance Monroe should be dismissed.

Plaintiffs' Complaint fails to assert claims against Monroe in either his individual capacity (*see* Doc. 1 at 10) or his official capacity (*see* Doc. 1 at 11).  Monroe points out (Doc. 21 at 8) that Plaintiffs allege that their rights have been violated but failed to identify which rights in both Count III and Count IV.  (*See* Doc. 1 at 10, 11).  Because of this, Monroe argues he should be dismissed in both his individual capacity (Count III) and official capacity (Count IV).  (Doc. 21 at 8).  The Court agrees.

Plaintiffs attempt to sue Monroe in his individual capacity without actually asserting any claims against him.  This is an improper shotgun pleading. *See Sledge v. Goodyear Dunlop Tires N. Am., Ltd.,* 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading."); *see also Boatman v. Town of Oakland,* 76 F.3d 341, 343 n.6 (11th Cir.

1996) (characterizing as a "'shotgun' pleading" a complaint that failed to place a defendant on notice of what the claim was and the grounds upon which it rested).

Here, Plaintiffs merely state in their Count III claim against Monroe in his individual capacity that he "failed to implement remedial training, supervision, or disciplinary measures" despite "notice of a pattern of constitutional violations by WHPD officers involving excessive force, unnecessary escalation, and failure to de-escalate during routine detentions." (Doc. 1 at 10). Plaintiffs do not describe the previous pattern of constitutional violations in any specific detail, and there is no mention of the specific constitutional violation underlying the Section 1983 claim against Monroe.

Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability. *Hardin v. Hayes*, 957 F.2d 845, 849 (11th Cir. 1992). To state a claim of supervisory liability against Monroe, Plaintiffs would have to allege that he personally participated in the alleged constitutional violation or that there was a causal connection between conduct by Monroe and the alleged constitutional deprivation. *See Williams v. Bennett*, 689 F.2d 1370, 1380–81 (11th Cir. 1982).

Here, Monroe was not present during the events on March 4, 2025. (Doc. 1 at 3–6). Consequently, Plaintiffs must allege a causal connection between acts or omissions of Monroe and the constitutional violation. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Yet, Plaintiffs have not clearly alleged in sufficient detail any facts that show Monroe was deliberately indifferent to constitutional

9

rights, *see Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991), that he directed or knowingly failed to prevent some action that violated constitutional rights, *see Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003), or that there is a history of widespread abuses to put him on notice and which he then failed to address. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  Thus, Plaintiffs cannot proceed against Monroe in his individual capacity because they have failed to assert a claim of supervisory liability against him.

Further, Plaintiffs do not allege any activity by Monroe in their *Monell* liability claim in Count IV either.  (Doc. 1 at 11).  They only mention Monroe in a parenthetical subheading to the section.  (Doc. 1 at 11).  This is not enough to avoid dismissal.  Plaintiffs must plead that Monroe actually did or failed to do something to be liable under *Monell.  Williams v. Bennett*, 689 F.2d 1370, 1380–81 (11th Cir. 1982).  But Plaintiffs have failed to do so.

Moreover, it is duplicative for Plaintiffs to allege the same claims against both Monroe and the City.  "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal quotation marks and citations omitted).  Therefore, Plaintiffs cannot proceed against Monroe in his official capacity because they have failed to state a claim against him upon which relief can be granted.

### III.    Whether the City of Winter Haven should be dismissed

Lastly, Plaintiffs allege *Monell* liability against the City by asserting that the City "maintained policies and customs that were the moving force behind the constitutional violations suffered by Plaintiffs." (Doc. 1 at 11).  Namely, the Plaintiffs state the following as failures of the City: (1) failure to train and supervise officers regarding de-escalation and trauma informed tactics; (2) tolerance of unnecessary escalation; (3) ratification of misconduct through public defense of the involved officers; and (4) deliberate indifference to a pattern of similar misconduct. (Doc. 1 at 11).

Without notice of a need to train or supervise in a particular area, a municipality is not liable for any failure to train and supervise. *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).  To establish deliberate indifference, a municipality must have known of a need to train or supervise in a particular area, and the municipality must have made a deliberate choice not to take any action. *Id.* at 1350.  Here, Plaintiffs fail to identify a specific policy, custom or practice of the City and fail to mention the constitutional violation that took place here.  (Doc. 1 at 11–13).  Plaintiffs only mention "a pattern of similar violations" but fail to provide sufficient detail to suggest that the City knew further training or supervision was required in a particular area, such as detaining individuals for too long, or a pattern of similar arrests that would suggest the City's deliberate indifference to holding individuals for extended periods of time.  (*See* Doc. 1 at 11–13).  Plaintiffs only make

11

*conclusory allegations* without stating the facts necessary to show that there is a claim of municipal liability upon which this Court can grant relief.

Thus, Plaintiffs' claim against the City should be dismissed for failing to state a claim in their Complaint upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Defendants' Motion to Dismiss (Doc. 21) is **GRANTED in part and DENIED in part**.

2) Plaintiffs' Complaint (Doc. 1) is **DISMISSED without prejudice**.

3) The Court will provide Plaintiffs leave to file an amended complaint. Plaintiffs may not assert any new claims if they choose to file an amended complaint. Should Plaintiffs wish to file an amended complaint, they must do so by May 22, 2026. Failure to file any amended complaint on or before May 22, 2026 may result in the dismissal of this case without further notice.

**ORDERED** in Tampa, Florida on May 8, 2026.

_____

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE

12